Carol F. Schechter, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 31, 1985, to Judges CRAIG and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Robert E. Rains, Rains & Jacobsen,* for petitioner.

*James K. Bradley,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, April 25, 1985:

Carol F. Schechter (claimant) appeals here an order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits on the grounds that the claimant voluntarily terminated her employment without cause of a necessitous and compelling nature. Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937), *as amended,* 43 P.S. §802(b).

The facts are not in dispute. The claimant worked for the Pennsylvania Department of Health (employer) in Harrisburg from May 1973 until January 1983 when she left her job as a Public Health Executive II to join her husband in Arlington, Virginia. She had married David Narrow, an attorney working for the Federal Trade Commission in Washington, D.C., in May 1980. For the first year of their marriage, the couple lived apart during the week and spent weekends together, alternating the locale. When this arrangement proved too burdensome, Mr. Narrow arranged to work a four-day week and to spend the weekends in Harrisburg, although he continued to maintain a separate residence in Arlington, Virginia. In July 1982, the claimant went on maternity leave. Two months later, in September, the couple's first child was born, and Mr. Narrow then decided to return to full-time employment at the Federal Trade Commission because of the possibility of layoffs among the part-time employees. Believing that the maintenance of two households was no longer economically feasible and desiring to raise the child together, the family moved to their Arlington, Virginia residence in December 1982. At the end of her maternity leave, the claimant quit her job in Harrisburg.

The sole question before us is whether or not the claimant's resignation was of a necessitous and com-

pelling cause within the meaning of Section 402(b) of the Law. We, of course, are empowered to review all questions of law on appeal. Section 702 of the Administrative Agency Law, 2 Pa. C. S. §702.

The claimant, citing *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa. Commonwealth Ct. 201, 450 A.2d 775 (1982), argues that the Board erred in concluding that she was not forced either by financial circumstances or by an insurmountable transportation problem to quit her job. She further maintains that an award of benefits in her case will be in keeping with the liberal construction to be accorded the Unemployment Compensation Law.

Following the 1980 Amendment to Section 402(b) of the Law,[1] we ruled that a claimant who voluntarily terminates her employment because of family obligations may receive benefits where she can establish that the cause was necessitous and compelling. *Wheeler.* Thus, in *Steck v. Unemployment Compensation Board of Review*, 78 Pa. Commonwealth Ct. 514, 467 A.2d 1378 (1983), we held that a claimant, who left her job as a teacher's aide to follow her husband to Arizona, was eligible for benefits in light of the fact that the move was precipitated by her husband's ill health. Yet, in *Kleban v. Unemployment Compensation Board of Review*, 73 Pa. Commonwealth Ct. 540, 459 A.2d 53 (1983), we affirmed the Board's denial of benefits, concluding that the claimant's decision to quit her job and move to Pittsburgh to be with her husband was not reasonable because of the temporary nature of his position.

---

[1] Section 13 of the Act of July 10, 1980, P.L. 521. The amendment deleted language which specifically disqualified as ineligible for benefits a claimant who voluntarily terminated his or her employment to follow a spouse to a new location or to attend to family obligations.

Although the case before us now presents a unique situation in that the claimant and her spouse have consolidated their living arrangements after maintaining separate homes since the inception of their marriage, we believe that benefits could be awarded if the claimant could establish that her action was "reasonable" and undertaken in "good faith." In this regard, however, we would have to determine whether or not her decision was necessitated by actions beyond her control or rather brought about by a purely personal preference. *See Steck, Kleban* and *Wheeler.* And, in so doing, we would have to keep in mind not only that the Unemployment Compensation Law is to be liberally construed but that the purpose of this statute is to aid those who through no fault of their own become unemployed, Section 3 of the Law, 43 P.S. §752, not to finance a transition in family living arrangements which might also result in a temporary self-imposed economic hardship. *See Wheeler.*

Prior to the claimant's voluntary job termination, she held a position with a salary of $35,000.00 per year and her spouse earned in excess of that figure. Additionally, the couple owned two houses, one in Harrisburg, Pennsylvania, and the second in Arlington, Virginia. And, as already stated, they had resided in their separate residences during the work week, living together only on weekends, from the beginning of their marriage. We believe it is the circumstances which existed *prior to her voluntary termination,* which must guide our determination of whether or not the decision to quit work was for necessitous and compelling cause. *Compare Steck, Kleban* and *Wheeler.*

Our review of the record indicates that the Board's conclusion that the claimant's decision to quit was not necessitated by economic hardship is correct. In this regard, we cannot ignore the unique fact that this couple had successfully maintained separate house-

holds while they pursued their individual careers for the first two years of their marriage. And, moreover, we are not faced with a situation here where the primary bread-winner loses his/her job, moves away in order to obtain employment and the claimant-spouse seeks to follow because of the couple's inability to maintain two separate households. *See Kleban.* Additionally, we are not convinced that the husband's decision to go back to full-time employment necessitated the claimant's move to Arlington, because this couple had lived apart from the beginning of their marriage.

Furthermore, the claimant's contention that a daily commute to work of 130 miles one way was an insurmountable transportation problem which supports an award of benefits misstates the law. Insurmountable commuting problems which give rise to an award of benefits occur when the employer relocates his business or transfers the employee, and the employee/claimant is then faced, through no fault of his/her own, with a burdensome commute. *See Womeldorf v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 627, 430 A.2d 722 (1981). The commuting problem arose here when the claimant chose to move to Arlington, Virginia, for reasons which, although laudable, can only be described as purely personal. *See Wheeler.* And, we would further note that, even in circumstances where a claimant has established the existence of an employer-created commuting problem, we have held that, prior to receiving benefits, it must be shown that the claimant took reasonable steps to overcome this transportation problem. *Yurack v. Unemployment Compensation Board of Review,* 62 Pa. Commonwealth Ct. 47, 435 A.2d 663 (1981) and *Musguire v. Unemployment Compensation Board of Review,* 52 Pa. Commonwealth Ct. 137, 415 A.2d 708 (1980).

30

We believe, of course, that the preservation of the family unit, especially where a child is involved, is socially desirable. As we have continually stated in cases since the 1980 Amendment to the Unemployment Compensation Law, however, the desire to maintain the family unit is not, in and of itself, sufficient cause to quit one's job and to receive benefits. *Wheeler*.

In light of the fact that the claimant here has not established that her unique situation created real and substantial pressure to terminate employment, the present state of the law requires that we affirm the order of the Board.

### ORDER

AND Now, this 25th day of April, 1985, we hereby affirm the order of the Unemployment Compensation Board of Review.

Judge WILLIAMS, JR. did not participate in the decision in this case.