559 A.2d 996

**Geraldine M. FULTON, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 1989.

Decided June 6, 1989.

364

Henry Leone, Northwestern Legal Services, Erie, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, James K. Bradley, Asst. Counsel, Harrisburg, for respondent.

Before CRUMLISH, Jr., President Judge, and COLINS, J., and BARBIERI, Senior Judge.

## OPINION

CRUMLISH, Jr., President Judge.

Geraldine Fulton appeals an Unemployment Compensation Board of Review order upholding a referee's decision to deny benefits. Section 402(b) of the Unemployment Compensation Law.[1] We reverse.

Fulton married her husband while he was incarcerated at the State Correctional Institute at Huntingdon. Fulton's husband was accepted into a parole "pre-release program," in which a prospective parolee is placed in a supervised

1. Act of December 5, 1936, Second Ex.Sess., P.L. 2897 (1937), *as amended,* 43 P.S. § 802(b).

community setting and is given progressive credits. An accumulation of credits entitles participants to home furloughs of increasing length. When her husband was accepted at the Erie Community Service Center, approximately 250 miles from Huntingdon, Fulton quit her job as a waitress to accompany her husband and establish a residence there.

The single issue we are called upon to address in this case is whether Fulton's relocation to join her husband in a prison pre-release program constitutes a necessitous and compelling reason to voluntarily terminate her employment. For the reasons which follow, we hold that compelling cause exists.

When a claimant quits a job to join a relocating spouse, this Court has analyzed the circumstances of that spouse's relocation. If the transition is caused by circumstances beyond the spouse's control, there may be compelling reasons for the following spouse to voluntarily terminate his or her employment. *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa.Commonwealth Ct. 201, 450 A.2d 775 (1982).

Fulton maintains that such circumstances exist here. The Board counters that her husband's assignment to a pre-parole program was not beyond his control because the circumstance which led to his relocation to the Erie Center in the first place—namely, his incarceration—was not beyond his control. We find this argument misplaced.

The Unemployment Compensation Law is a remedial statute which is to be liberally construed to the benefit of claimants. *Percosky v. Unemployment Compensation Board of Review*, 81 Pa.Commonwealth Ct. 97, 472 A.2d 1186 (1984). We are also aware of the remedial purposes of pre-release programs such as that into which Fulton's husband entered. The Board, on the authority of Section 3 [2] of the Unemployment Compensation Law, which declares that benefits are to be granted to those who are unemployed

2. 43 P.S. § 752.

"through no fault of their own," asserts that Fulton's husband's incarceration was his own fault.

■ However, to relate Fulton's husband's move to the facts which led to his imprisonment is too attenuated an argument. We are loathe to frustrate the remedial purposes of both the Unemployment Compensation Law and modern correctional theories by disqualifying a claimant on a circumstance so remote from the immediate cause of a spouse's move.[3] To do so would discourage inmates who have been deemed good candidates from participating in programs designed to inculcate the proper family and moral values necessary for re-entry into society. We do not perceive that the Unemployment Compensation Law was intended to impede the purposes of rehabilitative penal programs. Neither the quality of mercy nor the statutes should be so strained.

While we agree that Fulton's husband's *incarceration* was not beyond his control, we must bear in mind that the cause of relocation was not his criminal conviction or, in turn, his imprisonment. It was his *release*. We find the circumstances of the move to the Erie Center were sufficiently beyond the husband's control to compel Fulton to voluntarily terminate her job. This is particularly so in view of the unrefuted testimony that pre-release facilities closer to Huntingdon were explored but unavailable; that maintaining employment, supporting family and maintaining a home were requisites to progress in the program; and that Fulton's decision to move was made in consultation with correctional advisers at Huntingdon.

The referee's finding that her husband's participation might have been *unlikely* if Fulton had not relocated does not translate her move (nor, for that matter, her husband's) into a purely personal preference. Because we hold that the Board has erred as a matter of law, we reverse.

**3.** We hasten to add, however, that this decision does not establish a rule that spouses who quit their jobs to join their incarcerated mates may qualify for benefits. In that instance, the relocating spouse's transition *would indeed be caused* by circumstances within his control—the criminal act which ultimately led to his incarceration.

## ORDER

The Unemployment Compensation Board of Review order, No. B–263719 dated February 18, 1988, is reversed.