330

613 A.2d 116

**HAMOT MEDICAL CENTER, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 3, 1992.

Decided July 21, 1992.

Reargument Denied Sept. 11, 1992.

Lynn C. Outwater and James A. Prozzi, for appellant.

No appearance for respondent.

Gerald J. Villella, for intervenor Pamela Cioccio.

Before COLINS and PELLEGRINI, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Hamot Medical Center (Hamot) appeals from an order of the Unemployment Compensation Board of Review (the Board) which determined that claimant Pamela Cioccio (Cioccio) was not disqualified from receiving unemployment compensation benefits under Section 402(a) or 401(d)(1) of the Unemployment Compensation Law (the Law).[1]

Cioccio is currently employed as a medical transcriptionist for Hamot Medical Center and works at home for an average of fifteen to twenty hours a week based on her availability. She has worked for Hamot for over three years and has held various positions in that time. Initially she worked full time (forty hours) as a second shift medical transcriptionist. Cioccio's next position was full time as a secretary in the marketing department. After she filed sexual harassment charges against one of her supervisors in the marketing department, Hamot immediately created a full time secretarial position in community relations until another position could be found. Cioccio requested, and received, a move to flex time with a reduction in regular hours from eighty to sixty-four for the pay period.[2] (Notes of Testimony, 2/22/91, p. 13.) Cioccio was unhappy with the position in community relations and asked to be assigned to work part-time as an at-home medical transcriptionist. In response to her request, Cioccio was advised

1. Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-914.

2. Cioccio was pregnant at the time and requested the reduction in hours upon the advice of her psychiatrist.

that she could either remain in her current full time position in community relations until a position could be found or she could take the part-time at-home typing position. (Memorandum, 3/23/90, Employer Exhibit 2 and Letter from the President, 4/2/90, Employer Exhibit 3.) On April 20, 1990, Cioccio began working as an at-home transcriptionist. She has been working an average of fifteen to twenty hours a week based on her own availability. The employment coordinator has been in touch with Cioccio regarding employment opportunities at Hamot and advised Cioccio to call her when she was ready to seek other employment so they could begin the process of sending her appropriate job postings. (Letter, 5/7/90, Claimant Exhibit 1.) An August 17, 1990 memorandum advised Cioccio that she would "have first opportunity for an ample supply of [at-home] work" and informed her that a full time position was available in the transcription department. (Memorandum, 8/17/90, Employer Exhibit 1.) In December 1990, Cioccio again refused a full time position in the transcription department. (Finding of Fact 10, Employer Exhibit 6, 7/11/91.)

While remaining in her position with Hamot, Cioccio began working as a part-time typist for Lake Erie Institute of Rehabilitation (LEIR) in September 1990. She was laid off for lack of work in December 1990 and she applied for unemployment compensation benefits. The Office of Employment Security (OES) granted the benefits but because Cioccio didn't earn $1,236.00 (or six times her weekly benefit rate of $206.00) at LEIR, the charges were applied against Hamot.

To avoid the unemployment charges, Hamot offered Cioccio a full time position as medical transcriptionist. Cioccio refused the position because she did not want to work as a medical transcriptionist and she did not want to work on the second shift. The OES denied benefits concluding that Cioccio was ineligible under Section 402(a) of the Law [3] and under

3. "An employe shall be ineligible for compensation for any week—(a) In which his unemployment is due to failure, without good cause, either to apply for suitable work ... or to accept suitable work when offered to him by the employment officer or by any employer...." 43 P.S. § 802(a).

Section 401(d) because she was not able and available for suitable work. A hearing was held before a referee at which Cioccio testified:

That I didn't want another full time transcription job, because it's not comparable to what I left in marketing. It was my understanding that when I took the at-home typing it was a temporary situation. I'm on temporary status. I have no benefits. It's just not comparable. I was at 203 points. This is only a hundred and some.

(N.T., 2/22/91, p. 6.) Cioccio testified that she sent resumes to other area employers but all the responses were for part-time and she was trying to find full time. (N.T., 2/22/91, p. 8.) Cioccio testified that she had received a letter from the Hamot employment coordinator indicating Hamot's willingness to find an appropriate job placement, and that she had been offered a full time position as medical transcriptionist at full benefits in August 1990 which she refused. (Claimant's Exhibit 1.)

The referee found that the position Hamot offered was suitable work because the salary and benefits were comparable to her former position and Cioccio had worked as a full time medical transcriptionist on the second shift in the past. The referee concluded that:

"[t]he claimant was working in an at home typing position on a part-time basis simply because she preferred to work at home. The claimant had requested that she be permitted to work at home as she decided that she did not want to work in a full-time secretarial position in Community Relations at the hospital.

(Referee's Decision, 3/6/91.) The referee decided that Cioccio was capable of performing the work offered and that her failure to accept the position disqualified her from receiving benefits under Section 402(a) of the Law.

Cioccio appealed and the Board reversed based on the following Findings of Fact:

7. Claimant gave up her job with community relations as she felt she was not given enough work to do and claimant also had contact with a co-worker whom she had accused of sexually harassing her.

8. In August 1990, claimant was offered full-time work as a medical transcriptionist as claimant was informed that she could return to work at any time and that her benefits would be the same if she had accepted the job, which work claimant did not accept.

9. On December 14, 1990, the assistant director contacted claimant at her home to inform her that a position was open in medical transcription and claimant was offered the job; claimant's response was that she preferred to work at home.

10. On January 10, 1991, claimant was sent a letter informing her that a full-time medical transcriptionist job was available on the 3:00 p.m. to 11:30 p.m. shift at a salary of $8.33 per hour which was comparable to what claimant was making in her job typing at home.

11. Claimant was to respond to the offer if she was interested, but claimant made no response to the offer.

(Board's Decision and Order, 7/11/91.) The Board concluded that because:

Claimant is working part-time at home with her child. There is nothing in the unemployment compensation law which requires a claimant to voluntarily quit suitable part-time work in order to accept suitable full-time work. Nor is there anything in the unemployment compensation law requiring the employer to find a claimant suitable full-time work to replace her suitable part-time work. Therefore, since claimant is working part-time, she is eligible for benefits under Section 402(a) of the Law.

(Board's Decision and Order, 7/11/91, p. 3.)

At the outset, we recognize that the Board is the ultimate finder of fact and empowered to substitute its judgment for that of the referee on disputed facts. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). Furthermore, our scope of review is limited to determining whether the Board has committed an error of law, whether the findings of fact are supported by substantial evidence or whether constitutional rights have been violated. *McGovern's Estate v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

■ The fundamental purpose of the Law is to relieve workers who become unemployed through no fault of their own of the hardships flowing from the loss of employment. 43 P.S. § 752; *Schechter v. Unemployment Compensation Board of Review,* 89 Pa.Commonwealth Ct. 24, 491 A.2d 938 (1985). The purpose of the Law then is to prevent hardships, not create unwarranted rewards. If the decision of the Board stands Cioccio will reap the benefits of the bilateral change to the employment contract which *she initiated.*

The linchpin of the Board's decision is that since Cioccio is employed part-time she is entitled to unemployment benefits but she is not required to accept suitable full time work when offered by the employer liable for the payment of benefits. Cioccio could have continued to work for Hamot full time (forty hours a week) as a secretary in the community relations department. First, Cioccio chose to reduce the hours she worked to thirty-two. Next, she chose to *voluntarily* assume a position which allowed her to work at home, at her convenience, and to further reduce her hours to between fifteen and twenty a week.

To be eligible for unemployment compensation benefits a claimant must be unemployed as defined in Section 4(u) of the Law "[a]n individual shall be deemed unemployed ... (II) with respect to any week of less than his full-time work...." 43 P.S. § 753(u). This Court took notice of the fact that the statute does not specify forty hours but characterizes "full time" with reference to a particular employee. *Philadelphia Newspapers, Inc. v. Unemployment Compensation Board of Review,* 57 Pa.Commonwealth Ct. 639, 426 A.2d 1289 (1981). The question then is what is full time for Cioccio? She originally worked forty hours in the marketing department but at her request her hours were reduced first to thirty-two then to twenty. Because she voluntarily quit a forty hour position to assume a twenty hour position, normal full time work for Cioccio was twenty hours or at least arguably whatever could be provided by the at-home transcription department.

The Board erred when it concluded that Hamot's offer required Cioccio to voluntarily quit a suitable part-time job to accept a suitable full time job. Cioccio's part-time position is still available. Hamot merely asserts that if it is to be liable for benefits based on a forty hour full time position, Cioccio should be required to work those hours since several suitable positions are available. Irene Smith, the assistant director of medical records testified that a memorandum was sent on August 17, 1990, which offered Cioccio the first opportunity for an ample supply of at-home work and also offered her a full time position in the department. (N.T., 2/22/91, p. 20; Employer Exhibit I.) Smith testified that Cioccio could easily have worked forty hours a week at her at-home transcriptionist position. (N.T., 2/22/91, p. 21.) Furthermore, Smith testified that both the full time position and forty hours a week at-home typing remain open.

Hamot has done everything in its power to accommodate Cioccio. Hamot didn't wait to determine whether there was any basis to her allegations but responded immediately to Cioccio's sexual harassment claim by creating a position for her out of harm's way. When Cioccio requested a reduction in hours, the request was granted without question. When she asked to transfer to at-home transcription at a further reduction of hours, that request was also granted. Hamot has offered Cioccio three different employment options and asked her to make a choice. If Cioccio had voluntarily quit her position at Hamot before accepting the part-time position with LEIR, Hamot would be entitled to relief from charges under 43 P.S. § 782. Hamot's only relief, however, under the present set of facts is to offer Cioccio a suitable position which it has done. We conclude that the Board erred and claimant is disqualified from receiving benefits under § 402(a) of the Law.

Reversed.

## ORDER

NOW, July 21, 1992, the order of the Unemployment Compensation Board of Review, dated July 11, 1991, at B–291715, is reversed.