**PENNSYLVANIA GAMING CONTROL BOARD, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 18, 2011.
Decided May 23, 2012.
Reargument Denied July 6, 2012.

Leadbetter, President Judge, dissented.

Kathryn McDermott Speaks, Senior Assistant Chief Counsel, Harrisburg, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

Mary S. Wyatte, Camp Hill, for intervenor Liane B. Wyatte.

BEFORE: LEADBETTER, President Judge [1], and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Petitioner Pennsylvania Gaming Control Board (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed a decision of an Unemployment Compensation Referee (Referee) and determined Liane B. Wyatte (Claimant) [2] to be eligible for unemployment compensation. For the reasons set forth below, we affirm the Board's order.

Claimant applied for unemployment compensation benefits after voluntarily terminating her employment with Employer as an administrative assistant. The Erie UC Service Center (Service Center) issued a determination, finding Claimant to be ineligible for benefits under Section 402(b) of the Law,[3] pertaining to voluntary termination without cause of a necessitous and compelling nature. (Service Center determination, attached to Petitioner's Brief at Appendix A, Page 1.) Claimant appealed the Service Center's determination.

During a hearing before the Referee, Claimant testified that she met Zachary Wyatte in May 2008 and that the couple began dating a few weeks after they met. (Reproduced Record (R.R.) at 24a). Claimant also stated that Mr. Wyatte joined the United States Coast Guard in August 2008, and he was relocated from Pennsylvania to be stationed in Louisiana. (Id. at 24a, 27a). The couple dated continuously until they married on May 29, 2010. (Id.) Claimant noted that prior to their marriage, she and Mr. Wyatte maintained their long-distance relationship by visiting each other whenever possible. (Id. at 24a–25a). At the time of Claimant's marriage to Mr. Wyatte, Claimant lived in Pennsylvania and Mr. Wyatte lived in Louisiana. (Id. at 23a–24a, 27a).

Claimant stated that she left her employment so that she could relocate to where her husband is currently stationed. (Id. at 29a.) Although the record does not indicate the exact date of Claimant's move, it is clear that she moved shortly after her voluntary separation from Employer on August 6, 2010. (Id. at 25a, 28a.)

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.

2. Claimant intervened in this appeal.

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b).

Claimant made several attempts to find substantial employment in Louisiana before and after her move, including applying "for six different administrative assistant clerical positions that were in the area." (*Id.* at 25a–26a). Mr. Wyatte was obligated to fulfill his commitment to the Coast Guard until August 14, 2011, and, at the time of the hearing, Mr. Wyatte had "already put in for his reenlistment extension." (*Id.* at 24a, 27a, and 30.) The evidence of record demonstrates that Claimant lived at home with her parents in Pennsylvania prior to her move to Louisiana and that she had attempted to advance her career with Employer by applying for other positions to no avail. (*Id.* at 25a–26a, 30a.)

Following the hearing, the Referee issued a decision, in which he affirmed the Service Center's determination and found Claimant to be ineligible for unemployment compensation benefits. (Referee's decision, attached to Petitioner's Brief at Appendix B, Page 2.)

Claimant appealed the Referee's decision to the Board, and the Board made the following findings on appeal:

1. For purposes of this appeal, the claimant was last employed on August 6, 2010, as a full-time administrative assistant for the Pennsylvania Gaming Control Board, earnings [sic] $30,000 annually.

2. The claimant began dating her future spouse in May of 2008.

3. In August of 2008, her future spouse enlisted in the United States Coast Guard.

4. The claimant's future spouse was relocated by the United States Coast Guard to Louisiana where he was stationed and purchased a residence.

5. On May 29, 2010, the claimant was married to her spouse.

6. On August 6, 2010, the claimant voluntarily resigned her employment to relocate to Louisiana to be with her spouse.

7. The claimant and her spouse had an insurmountable commuting distance.

8. The claimant and her spouse could not afford to maintain two residences.

(Board's decision, attached to Petitioner's Brief at Appendix C, page 1.)

The Board reversed the Referee's decision, holding that Claimant was eligible for benefits under Section 402(b) of the Law. (*Id.* at 2.) The Board first noted that it found Claimant's testimony credible and resolved the conflicts in testimony, in relevant part, in favor of Claimant. (*Id.*) The Board also stated that Claimant was married to her spouse, that the spouse was relocated by the United States Coast Guard, and that Claimant quit her employment to follow him. (*Id.*) The Board concluded that Claimant had an insurmountable commuting distance and that Claimant and her spouse could not afford to maintain two residences. (*Id.*) Thus, the Board found that Claimant had met her burden to show that she was entitled to benefits. Employer now petitions this Court for review of the Board's order.

On appeal,[4] Employer argues that the Board erred in applying the "follow-the-spouse" doctrine to Claimant's circumstances to determine that she was not ineligible for benefits under Section 402(b) of the Law. Alternatively, Employer essentially argues that if the Board was correct in applying the "follow-the-spouse" doctrine to Claimant's circumstances, then the

---

4. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

Board erred as a matter of law in determining that Claimant met the doctrine's requirements, because Claimant's spouse relocated prior to their marriage and his relocation was allegedly based on his personal preference to enlist in the United States Coast Guard rather than opting to stay in Pennsylvania in the Naval Reserves.[5]

We begin by noting that Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Wasko v. Unemployment Comp. Bd. or Review*, 88 Pa.Cmwlth. 16, 488 A.2d 388, 389 (1985). A claimant who voluntarily quits her employment bears the burden of proving that necessitous and compelling reasons motivated that decision. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa.Cmwlth.1998), *appeal denied*, 568 Pa. 650, 794 A.2d 364 (1999). A necessitous and compelling cause for voluntarily leaving employment is one that "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Mercy Hosp. of Pittsburgh v. Unemployment Comp. Bd. of Review*, 654 A.2d 264, 266 (Pa.Cmwlth.1995).

Generally, in order to establish cause of a necessitous and compelling nature, a claimant must establish that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa.Cmwlth.2008). "Cause of a necessitous and compelling nature may arise from domestic circumstances and need not be connected with or arise out of the claimant's employment." *Green v. Unemployment Comp. Bd. of Review*, 108 Pa. Cmwlth. 216, 529 A.2d 597, 598–99 (1987) (citing *Kleban v. Unemployment Comp. Bd. of Review*, 73 Pa.Cmwlth. 540, 459 A.2d 53 (1983)). For instance, a variety of circumstances pertaining to family obli-

5. In the statement of questions involved portion of Employer's brief, Employer appears to set forth a substantial evidence and legal error challenge to the Board's determinations regarding the couple's insurmountable commuting problem and inability to afford two residences. Employer failed to develop in its brief, however, the question of whether substantial evidence exists to support the Board's findings that an insurmountable commuting distance existed and that the couple could not afford to maintain two residences. At most, Employer's brief contains one line criticizing the Board for not pointing to specific testimony in the record showing economic hardship and an insurmountable commuting distance. (Petitioner's brief, page 14.) The issue of whether substantial evidence exists to support those findings, therefore, is waived. Pa. R.A.P. 2116; *Van Duser v. Unemployment Comp. Bd. of Review*, 164 Pa.Cmwlth. 96, 642 A.2d 544 (1994); *Coraluzzi v. Cmwlth.*, 105 Pa.Cmwlth. 305, 524 A.2d 540 (1987). Regardless, even if Employer had not waived the issue, we would conclude that substantial evidence exists to support those findings based on the testimony summarized above. Moreover, it is apparent from Employer's argument that Employer's focus is on the legal question of whether the findings of an insurmountable commuting distance and inability to afford two residences are relevant to the analysis given that Claimant's spouse relocated almost two years prior to their marriage. This issue is subsumed in the second issue addressed in this Opinion and need not be addressed further.

gations, such as those relating to childcare, parental care, and marital circumstances, including spousal relocation, may constitute cause of a necessitous and compelling nature to voluntarily terminate one's employment, depending upon the facts of each case.[6]

As to when family obligations may satisfy the requirement of cause of a necessitous and compelling nature to voluntarily terminate one's employment, this Court in *Green* explained:

> Family obligations or joining a spouse at a new location can constitute a necessitous and compelling reason to leave one's employment. *Steck v. Unemployment Comp. Bd. of Rev[iew*, 78 Pa. Cmwlth. 514], 467 A.2d 1378 (Pa. Cmwlth.1983). However, a claimant voluntarily terminating employment for family obligations must establish that the action was reasonable and undertaken in good faith. *Kleban.* The actual reasons may not be purely personal. *Steck.* Although the preservation of the family unit is socially desirable, this desire to maintain the family unit is not in and of itself sufficient cause to terminate employment and become eligible for unemployment compensation benefits.

*Schechter v. Unemployment Comp. Bd. of Review* [89 Pa.Cmwlth. 24], 491 A.2d 938 (Pa.Cmwlth.1985).

*Id.* at 599. Thus, case law makes clear that reasons other than personal preference must exist to support a decision to voluntarily terminate one's employment, and the decision to quit must be reasonable and undertaken in good faith.

Case law regarding when a *newly married claimant* may have cause of a necessitous and compelling nature to quit her employment to join a spouse already residing in a distant location is undeveloped. Two somewhat analogous circumstances have been explored by the courts, and those circumstances provide insight to the case now before us. First, courts have considered instances where a claimant resided with a spouse who relocated to another area and the claimant also relocated to follow the relocating spouse—*e.g.,* the classic scenario from which the "follow-the-spouse" doctrine developed.[7] Second, courts have considered instances where a claimant and the spouse lived separate and apart for a period of time and thereafter the claimant moved to be with the spouse. In both scenarios, courts have employed

---

**6.** *See Truitt v. Unemployment Comp. Bd. of Review,* 527 Pa. 138, 589 A.2d 208 (1991) (holding that claimant had necessitous and compelling reason to quit when she was unable to locate suitable child care after regular babysitter quit and she was unable to rearrange work schedule); *Beachem v. Unemployment Comp. Bd. of Review,* 760 A.2d 68 (Pa. Cmwlth.2000) (holding that claimant who relocated to be closer to emotionally disturbed son to provide support had necessitous and compelling reasons to quit); *Mechanicsburg Area School District v. Unemployment Comp. Bd. of Review,* 122 Pa.Cmwlth. 135, 551 A.2d 401 (1988) (holding that claimant who followed spouse who obtained job 100 miles away after being laid off had necessitous and compelling reasons to quit to relocate with husband); *Rolland v. Unemployment Comp. Bd. of Review,* 98 Pa.Cmwlth. 163, 510 A.2d

408 (1986) (holding that claimant whose husband had reason to live in life care facility had necessitous and compelling reason to quit and relocate with husband); *Steck v. Unemployment Comp. Bd. of Review,* 78 Pa.Cmwlth. 514, 467 A.2d 1378 (1983) (holding that claimant whose husband moved to Arizona for reasons of climate at direction of doctor had necessitous and compelling reason to quit to relocate with husband); and *James v. Unemployment Comp. Bd. of Review,* 68 Pa. Cmwlth. 428, 449 A.2d 791 (1982) (holding that claimant had necessitous and compelling reasons to quit after request for leave to be by her dying mother's bedside was denied).

**7.** The "follow-the-spouse" doctrine was first enunciated in the case of *Wheeler v. Unemployment Compensation Board of Review,* 69 Pa.Cmwlth. 201, 450 A.2d 775 (1982).

what is commonly referred to as the "follow-the-spouse" doctrine, or a modified version of it, as part of the analysis of whether the family obligations constitute cause of a necessitous and compelling nature for the claimant to relocate and "follow the spouse."

 As to the first scenario, the classic "follow-the-spouse" case where a claimant who resided with a spouse quits her job to follow the relocating spouse to a new location, we have explained the "follow-the-spouse" doctrine as follows:

Where a claimant terminates employment to join a *relocating spouse*, the claimant must demonstrate an economic hardship in maintaining two residences or that the move has posed an insurmountable commuting problem. The claimant must also show that her resignation was the direct result of her spouse's relocation, i.e., the necessity to relocate must be caused by circumstances beyond the control of the claimant's spouse and not by personal preference, and the decision to relocate must be reasonable and be made in good faith. *These principles reflect the General Assembly's intent to permit the obligation of joining one's spouse, under the proper circumstances, to constitute cause of a necessitous and compelling nature to leave one's employment.* The desire to maintain the family unit is not by itself sufficient cause to terminate one's employment and receive benefits.

*Sturpe v. Unemployment Comp. Bd. of Review*, 823 A.2d 239, 242–43 (Pa.Cmwlth. 2003) (citations omitted) (emphasis added). Furthermore, "[w]hile preservation of the family unit does not, in and of itself, give rise to necessitous and compelling reason under Section 402(b) ... we are not indifferent to its social desirability." *Stevens v. Unemployment Comp. Bd. of Review*, 81 Pa.Cmwlth. 239, 473 A.2d 254, 257 (1984). Also, as Employer points out, the "follow-the-spouse" doctrine applies only to marital relationships.[8] Moreover, the "follow-the-spouse" doctrine requires that the claimant be married (as opposed to engaged) at the time that the claimant moves to be with the spouse.[9]

In *Glen Mills Schools v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa.Cmwlth.1995), we applied the "follow-the-spouse" doctrine to a situation where the claimant resided with her husband in Chester County, Pennsylvania, and was employed as a part-time dental hygienist. Her husband worked as a physicist in a highly-specialized field, until he lost his job on November 30, 1993. He sought employment locally for four months, but was unsuccessful in finding a local job. Thereafter, he secured a position working in Maryland, 140 miles from his home, resulting in at least a two-and-one-half (2½) hour commute one way. Initially, the claimant's husband commuted home on the weekends, but that arrange-

---

**8.** *Kurtz v. Unemployment Comp. Bd. of Review*, 101 Pa.Cmwlth. 299, 516 A.2d 410 (1986), *appeal denied*, 516 Pa. 644, 533 A.2d 715 (1987). In *Kurtz*, the claimant resigned from her employment on June 22, 1984, and she married the next day. Her new spouse had been living and working in another location, where they established their home together. In denying the claimant benefits, this Court stated that because there was no family unit in existence at the time of the claimant's voluntary quit, the "follow-the-spouse" doctrine did not apply. *Kurtz*, 516 A.2d at 412.

**9.** *Nimitz v. Unemployment Comp. Bd. of Review*, 699 A.2d 822 (Pa.Cmwlth.1997). In *Nimitz*, the claimant lived in Duncannon, Pennsylvania, with a roommate, who eventually moved to another part of the state. The claimant quit to follow the roommate and applied for unemployment compensation benefits. In denying her benefits, this Court held that the "follow-the-spouse" doctrine does not apply to cover non-marital relationships. *Nimitz*, 699 A.2d at 824.

ment became burdensome. It was not economically feasible for the couple to maintain separate residences. In May 1994, the claimant quit her employment to move to Maryland to be with her husband. The Board determined that the claimant had cause of a necessitous and compelling nature to voluntarily terminate her position. On appeal, this Court affirmed. In so doing, we noted that due to the husband's unique occupation and highly specialized skills, he was unable to find local employment, so his decision to accept employment in Maryland was made in good faith and not a mere personal choice. In other words, his decision to relocate was caused by circumstances beyond his control. Furthermore, we noted that a five (5) hour total commute each day was obviously an unreasonable amount to commute.

As to the second type of instance, where a claimant and the spouse maintained separate residences for a period of time since the beginning of their marriage and the claimant later moved to be with the spouse, we have applied the "follow-the-spouse" doctrine without concern as to whether the claimant relocated to follow a "relocating spouse" or whether the claimant merely relocated to follow a spouse who had resided elsewhere since the inception of the couple's marriage. *See Schechter v. Unemployment Comp. Bd. of Review*, 89 Pa.Cmwlth. 24, 491 A.2d 938 (1985). In *Schechter*, the claimant worked in Harrisburg from 1973 until 1983. In 1980, she married an attorney who lived in Arlington, Virginia. After the marriage, the claimant and her husband continued to live apart until 1982, when they decided that it would be best for the claimant to move to the husband's home in Arlington. In applying the "follow-the-spouse" doctrine in *Schechter*, we explained that:

> Although the case before us now presents a unique situation in that the claimant and her spouse have consolidated their living arrangements after main-taining separate homes since the inception of their marriage, we believe that benefits could be awarded if the claimant could establish that her action was "reasonable" and undertaken in "good faith."

*Schechter*, 491 A.2d at 940. In considering whether the claimant's actions in *Schechter* were "reasonable" and undertaken in "good faith," we considered whether the claimant's move was necessitated by economic hardship or an insurmountable distance or whether it was motivated by merely personal preference. In so doing, we wrote:

> Prior to the claimant's voluntary job termination, she held a position with a salary of $35,000.00 per year and her spouse earned in excess of that figure. Additionally, the couple owned two houses, one in Harrisburg, Pennsylvania, and the second in Arlington, Virginia. And, as already stated, they had resided in their separate residences during the work week, living together only on weekends, from the beginning of their marriage. We believe it is the circumstances which existed *prior to her voluntary termination*, which must guide our determination of whether or not the decision to quit work was for necessitous and compelling cause.

Our review of the record indicates that the Board's conclusion that the claimant's decision to quit was not necessitated by economic hardship is correct. In this regard, we cannot ignore the unique fact that this couple had successfully maintained separate households while they pursued their individual careers for the first two years of their marriage. And, moreover, we are not faced with a situation here where the primary bread-winner loses his/her job, moves away in order to obtain employment and the claimant-spouse seeks to

follow because of the couple's inability to maintain two separate households. Additionally, we are not convinced that the husband's decision to go back to full-time employment necessitated the claimant's move to Arlington, because this couple had lived apart from the beginning of their marriage.

*Id.* (citations omitted). Because the parties had been able to maintain the separate living arrangement as a married couple for over two years, thereby belying any contentions of economic hardship or an insurmountable commuting distance, we concluded that the claimant's voluntary termination of employment to move to be with her husband was the result of personal preference only. As such, the claimant was not eligible for benefits.[10]

█ With that background, we turn to Employer's argument that the Board erred in applying the "follow-the-spouse" doctrine to Claimant's circumstances to determine that she was not ineligible for benefits under Section 402(b) of the Law, because Claimant's spouse relocated prior to their marriage and his relocation was allegedly based on his personal preference to enlist in the United States Coast Guard, rather than opting to stay in Pennsylvania in the Naval Reserves.[11] Employer contends that, just as the doctrine does not apply to situations in which the claimant was not married at the time of the quit, *see Kurtz*, the doctrine also should not apply to situations in which the claimant was not married at the time of the relocation of the spouse. Employer appears to take the

position that the Board erred in applying the "follow-the-spouse" doctrine to the circumstances of this case, because the doctrine applies only to situations where a claimant moves to follow a *current spouse* who has relocated, as in *Glen Mills Schools*. In the case now before the Court, Employer contends that because Claimant's husband relocated to Louisiana before the couple married, the "follow-the-spouse" doctrine is inapplicable.

Employer's argument, however, ignores the fact that under *Schechter* the "follow-the-spouse" doctrine is applicable to a situation where a claimant begins a marriage living apart from a spouse and later moves to be with the spouse, provided that necessitous and compelling reasons otherwise exist for the move. In such an instance, whether a spouse relocated prior to the marriage is irrelevant to the analysis. For that reason, in the matter now before us, it is similarly irrelevant that Claimant's spouse relocated at a time prior to the couple's marriage. The Board, therefore, did not err in applying the "follow-the-spouse" doctrine to the case at hand in light of our opinion in *Schechter*.

Next, we turn our attention to Employer's alternative argument that the Board erred as a matter of law in determining that Claimant was not ineligible for benefits under Section 402(b) of the Law pursuant to the "follow-the-spouse" doctrine. Because Claimant and her spouse lived apart from the inception of their marriage and had not lived together as a married

---

**10.** In *Fulton v. Unemployment Compensation Board of Review*, 126 Pa.Cmwlth. 363, 559 A.2d 996 (1989), this Court similarly applied the "follow-the-spouse" doctrine to an instance where the claimant and the spouse lived apart at the inception of their marriage. In that case, the claimant married her spouse when he was in prison, and, she, therefore, did not live with him during the beginning of their marriage. The claimant's spouse quali-

fied for a parole program in a distant location. The claimant quit her job to follow her spouse who was relocating for the program, and this Court consequently awarded her benefits.

**11.** Military service is an obligation that Mr. Wyatte incurred as a graduate of the United States Merchant Marine Academy. (R.R. at 12a.)

couple prior to his relocation, the analysis set forth in *Schechter* is applicable to this situation. The Board, therefore, properly considered whether there was an economic hardship or an insurmountable commuting distance and whether the move was for reasons beyond mere personal choice. *See Schechter*. Thus, although Claimant was not required to establish that her spouse's relocation was beyond her control, she, nevertheless, still was required to establish that her own relocation to Louisiana following her marriage was for necessitous and compelling reasons and not merely due to personal preference in order to be eligible for benefits.

In analyzing whether cause of a necessitous and compelling nature existed, the Board considered Claimant's testimony regarding the reasons for her decision to relocate, and the Board specifically found that an "insurmountable commuting distance" existed, the couple "could not afford to maintain two residences" (as Claimant was not maintaining a residence while she lived in Pennsylvania with her parents),

and that Claimant's spouse "was relocated by the United States Coast Guard to Louisiana where he was currently stationed and purchased a residence." (Board's decision, attached to Petitioner's Brief at Appendix C, page 1.) Although Claimant's testimony reveals that her decision to relocate to where her husband was currently stationed involved some personal preference, Claimant's testimony revealed that the other factors identified above (*i.e.*, economic hardship and insurmountable commuting distance) also played a role in her decision. Based upon those factors, it is apparent that Claimant acted reasonably and with good faith in making her decision to relocate. The Board, therefore, did not err in concluding that cause of a necessitous and compelling nature existed for Claimant to voluntarily terminate her employment.[12]

Accordingly, we affirm the order of the Board.[13]

President Judge LEADBETTER dissents.

---

**12.** We note that the facts in this case are significantly distinguishable from those in *Schechter*. In *Schechter*, the married couple had commuted and maintained two residences for the first *two years* of their marriage. There was no evidence that the employment situation or commuting circumstances had changed at the time that the claimant relocated from Harrisburg, Pennsylvania, to Arlington, Virginia, to live with her husband. We affirmed the Board's decision that benefits were not warranted based upon the Board's correct conclusions that the claimant's decision to quit was not necessitated by economic hardship or commuting problems. Our decision was based largely on our observation that the couple had *successfully commuted for two years and successfully maintained two residences during that time*, and that the decision appeared to be based on the personal preference of raising their child together. In the case now before

the Court, Claimant and her husband did not live apart for a significant period of time before Claimant's move. Rather, Claimant joined her husband within a short period of time following their marriage, and she did not maintain a residence separate and apart from her husband prior to moving to Louisiana.

**13.** Although Claimant urges the Court to grant benefits on the basis that Claimant is a military spouse, citing a United States Department of Defense, State Liaison Office initiative implemented to encourage states to expand unemployment compensation benefits to trailing military spouses, policy decisions relating to the expansion of unemployment compensation are within the realm of the legislative branch, not the courts. Thus, in the absence of legislation to the contrary, we will continue to apply the "follow-the-spouse" doctrine whenever a claimant relocates to follow a spouse.

## *ORDER*

AND NOW, this 23rd day of May, 2012, the order of the Unemployment Compensation Board of Review is AFFIRMED.

