IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Brenner Car Credit, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 956 C.D. 2019 |
| | : Submitted: May 12, 2020 |
| Unemployment Compensation | : |
| Board of Review, | : |
| | : |
| Respondent | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                                    FILED:  July 9, 2020


            Brenner Car Credit (Employer) petitions for review of the order of the

Unemployment Compensation Board of Review (Board) reversing a referee's

determination and holding that Tammy L. Bowerson (Claimant) is not ineligible

for benefits under Section 402(b) of the Unemployment Compensation Law

(Law).[1]  We affirm.

            Claimant worked for Employer as a title clerk from September 10,

2018, to March 5, 2019.  During that period, she accrued numerous absences.  In

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).   Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment "is due to voluntarily leaving work without cause of a necessitous and compelling nature."

late February 2019, Claimant notified Employer that she was scheduled to undergo surgery on March 7, 2019, and she asked Employer for four to six weeks' leave.

Employer denied her request at a meeting two days before the scheduled operation. Employer advised Claimant that it could not hold her position open if she took time off for surgery and did not indicate that alternative work would be available to her. Claimant left the office angrily and made disparaging remarks about Employer.

On Claimant's internet initial claims form, she indicated that she left her position for health reasons, took a leave of absence, and was told that if she did so, her services would no longer be required.[2] Reproduced Record (R.R.) at 10a. Employer's questionnaire states that Claimant was not eligible for medical leave and that she quit her employment. The local job center determined that Claimant was ineligible for benefits under Section 402(b) of the Law. R.R. at 24a.

Claimant appealed. Both parties were represented by counsel at the referee's hearing.[3] Claimant testified she believed Employer had terminated her employment because it was unable to accommodate her request for medical leave. Claimant stated that on February 15, 2019, she informed Lorie Wilson, her manager, that she would need four to six weeks' medical leave to have surgery. On February 20, 2019, Claimant emailed Shannon Kryscio, Employer's Human Relations/office manager, advising that she was scheduled to undergo surgery on March 7, 2019, and would be unable to work for four to six weeks. She

---

[2] For unemployment compensation purposes, a leave of absence is considered a voluntary quit for the period of the leave. Reproduced Record at 8a.

[3] The hearing notice stated that the specific issues to be considered included Sections 402(b) (voluntary quit), 402(e) (willful misconduct), (3) (fault, to non-work related conduct), and 401(d)(1) and (2) (ability and availability for suitable work). R.R. at 31a.

subsequently discussed her need for surgery with Kryscio during a meeting on February 25, 2019. Claimant said Kryscio offered to investigate whether Employer had an extended leave policy, telling Claimant that she would review the employee handbook and possibly consult with an attorney. However, Kryscio did not provide Claimant any further information.

Claimant stated she told Kryscio it might be possible for her to come back to work in less than four weeks. She said she also advised Kryscio she would see if the surgery could be postponed. Claimant stated that she asked her doctor, but he told her that because of her family history of cancer it was imperative to have the surgery as planned. Claimant acknowledged that she did not get back to Kryscio with that information. R.R. at 75a-76a.

Claimant testified that there was no subsequent conversation about her scheduled surgery, and she assumed that her medical leave had been approved until she was told otherwise during a meeting with Kryscio and Scott Friends, Employer's general manager, on March 5, 2019. Claimant said Kryscio and Friends advised her that if she chose to have the surgery, her services would not be required after March 6, 2019.

Claimant stated that she left the office, went to her desk, and started packing her belongings. About ten minutes later, Kryscio came over and told Claimant that she could work the remainder of the day and the next day, and was not being fired. According to Claimant, she responded that when she was told her services would no longer be needed, she understood that her employment had been terminated. R.R. at 73a.

Kryscio testified that she, not Lorie Wilson, was Claimant's direct supervisor, and had clarified that with Claimant on prior occasions. Kryscio

3

estimated that Claimant had been absent 20 to 22 times during the course of her employment. She explained that Claimant worked as Employer's only title clerk, which was an essential position in Employer's business.

Kryscio stated that Claimant requested a leave of four to six weeks, with a possibility of returning to work sooner. She noted that under Employer's policy, paid leave was available only to employees with more than a year of service.

Kryscio added that employees could take unpaid time off, with prior approval, and that a limit on unpaid time off was determined on a case-by-case basis, depending in part on the importance of the employee's role to the business. R.R. at 82a. Kryscio acknowledged that she told Claimant she would explore leave options and that she did not give Claimant an answer about her request for leave until the meeting on March 5, 2019. R.R. at 88a.

Kryscio testified that she and Friends met with Claimant on March 5, 2019, intending to advise Claimant that leave was not available and see if Claimant could postpone the surgery. If Claimant was able to postpone the surgery, Kryscio and Friends would discuss performance improvement issues with her. Kryscio emphasized that Claimant would have maintained her employment with Employer if Claimant had postponed the surgery. Subsequently, Kryscio clarified that if Claimant proceeded with the surgery, Employer could not have kept Claimant's position open for her, and Employer did not discuss the possibility that continuing work might be available for Claimant in a different position.

Kryscio stated that after she and Friends told Claimant she was not eligible for leave, Claimant voluntarily quit her employment. According to Kryscio, Claimant said she had been fired, but Kryscio told Claimant she could

4

continue working. As Claimant left the building, she was yelling, using obscenities, and saying that she had sabotaged her recent work. R.R. at 85a.

Friends testified that the March 5, 2019 meeting was very short and that Claimant left it abruptly. He stated that Employer followed up on Claimant's comments regarding sabotaged work; the referee sustained Claimant's objection to further testimony on that issue. R.R. at 93a.

The referee affirmed the job center's determination that Claimant was ineligible for benefits under Section 402(b). The referee found that Claimant voluntarily left her employment and did not act with ordinary common sense or make a good faith effort to preserve her employment. However, the referee made no findings concerning Claimant's need for surgery or the availability of work. R.R. at 114a-16a.

Claimant appealed to the Board, which reversed the referee's decision. The Board issued the following findings:

> 1. [Claimant] was last employed as a title clerk by [Employer] from September 10, 2018, at a final rate of $16.50 an hour and her last day of work was March 5, 2019.
>
> 2. [Claimant] had a history of absenteeism during her short tenure with [Employer].
>
> 3. [Claimant] was hospitalized for mental health issues from February 16-20, 2019, and returned to work on February 25, 2019.
>
> 4. [Claimant] informed [Employer's] HR/office manager by email on February 20 or 21, 2019, that she had been scheduled for a medical procedure on March 7, 2019, requiring her to be out of work for approximately 4-6 weeks, although she was pushing for two weeks, and advised that she would be in contact with the doctor to see if the surgery date [could] be pushed forward.

5

5. On February 25, 2019, [Claimant] sent another email to the HR/office manager, listing upcoming dates and procedures; this listing identified Claimant's procedure for March 7 as a hysterectomy and advised of a post-operative doctor's appointment on March 15. [Claimant] promised to contact the manager on Monday, March 18 with an anticipated return-to-work date.

6. [Claimant's] doctor recommended this procedure because she had lesions previously removed from her cervix and cancer was very high in her family history. The need for this procedure was not caused by or related to [Claimant's] work with [Employer].

7. [Claimant] also discussed this procedure with the HR/office manager on February 25. The manager informed [Claimant] that she was not eligible for [leave under the Family and Medical Leave Act, 29 U.S.C. §s2601-2654], but promised to check to see if [Employer] had an extended leave policy, to possibly consult with [Employer's] attorney, and to get back to [Claimant].

8. [Claimant's] doctor advised her that the surgery was imperative, when she asked about a postponement. However, [Claimant] never got back to the HR/office manager with this information. On the other hand, the manager never responded to [Claimant] regarding her request for leave until March 5, 2019, two days before [Claimant's] scheduled surgery. Under [Employer's] leave policies, an employee must be with the organization for one year to receive vacation pay or paid time off. Similarly, individuals must be employed for one year to be eligible for FMLA or disability leave.

9. On March 5, 2019, [Claimant] met with the HR/office manager and [Employer's] general manager. [Claimant] was informed at this meeting that [Employer] could not approve her leave and hold her position open for 4-6 weeks; and if she decided to continue with the surgery,

her benefits would continue until the end of the month at which point she could elect [coverage under] COBRA.[4]

10. [Claimant] could have maintained her employment if she postponed her scheduled surgery. Had she done so, [Employer] would have presented her with a performance improvement plan at the March 5 meeting.

11. [Claimant] stormed out of the office where this meeting was held, began yelling, belittled [Employer], packed up her belongings, and announced she was leaving.

12. [Claimant] voluntarily quit her employment because [Employer] was unable to accommodate her leave request.

Board's Findings of Fact Nos. 1-12.

The Board recognized that Claimant had the burden to show necessitous and compelling cause to voluntarily terminate her employment. The Board credited Claimant's testimony regarding her need for the surgical procedure that potentially required her to be off work for four to six weeks. The Board noted that Claimant communicated with Employer about the surgery. When Claimant told Employer she would ask about postponing her surgery, Employer inferred that the surgery was elective. However, Claimant's doctor strongly advised her not to postpone the procedure. Board's Finding of Fact No. 8. Claimant did not inform Employer of that fact, and Employer did not advise Claimant that she could not take any medical leave, until the meeting on March 5, 2019. Board's 6/21/2019 Decision at 3.

---

[4] The Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§1161-1169.

The Board concluded that Claimant voluntarily quit her employment because she was given a choice of postponing imperative surgery or losing her job and that those circumstances presented necessitous and compelling cause for Claimant to voluntarily leave her employment. Additionally, the Board concluded that evidence concerning Claimant's conduct as she was leaving the office, including her comments that she had sabotaged her work, was not relevant to her eligibility for benefits because Employer insisted that Claimant was not discharged but voluntarily quit her employment.

Finally, the Board noted that Employer may be eligible for relief from charges under these facts, but "that issue was not before the Board at this juncture." Board's 6/21/2019 Decision at 3. The Board added: **"The Department may wish to investigate [Claimant's] ability and availability for suitable work beginning March 7, 2019, the date of [Claimant's] scheduled surgery, which was expected to keep her out of work 4-6 weeks."** *Id.* at 4 (emphasis in original).

<u>Discussion</u>

Initially, we note that a person is ineligible for unemployment benefits under Section 402(b) of the Law if she voluntarily terminates her employment without cause of a necessitous and compelling nature. The claimant bears the burden of proving necessitous and compelling cause. *Dopson v. Unemployment Compensation Board of Review*, 983 A.2d 1282, 1284 (Pa. Cmwlth. 2009). Necessitous and compelling cause "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the same circumstances to act in the same manner." *Philadelphia Parking Authority v. Unemployment Compensation Board*

8

*of Review*, 654 A.2d 280, 282 (Pa. Cmwlth. 1995) (quoting *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832-33 (Pa. 1977)). Whether a claimant has a cause of a necessitous and compelling nature to voluntarily leave her employment is a question of law subject to this Court's review. *Pennsylvania Gaming Control Board v. Unemployment Compensation Board of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth. 2012).

Additionally, the Board is the ultimate fact-finder in unemployment matters and is empowered to resolve all conflicts in the evidence, witness credibility, and weight accorded to the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008). It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. *Id*. Where substantial evidence supports the Board's findings, they are conclusive on appeal. *Id*. In addition, we must examine the testimony in the light most favorable to the party in whose favor the Board ruled, giving that party the benefit of all logical and reasonable inferences from the testimony. *Id*.

On appeal to this Court,[5] Employer first argues that the Board erred in holding that Claimant demonstrated necessitous and compelling cause to leave her employment because Claimant failed to take reasonable steps to preserve her employment relationship. More specifically, Employer complains that Claimant did not provide Employer any medical documentation confirming the need for

---

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Rodriguez v. Unemployment Compensation Board of Review*, 174 A.3d 1158, n.5 (Pa. Cmwlth. 2017).

surgery. However, Employer does not contend that Claimant needed medical evidence to satisfy her burden of proof, and we have repeatedly held that a claimant's testimony *and/or* documentary evidence is competent to establish the existence of a medical condition. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 969 (Pa. Cmwlth. 2010); *Goettler Distributing Inc. v. Unemployment Compensation Board of Review*, 508 A.2d 630, 631-32 (Pa. Cmwlth. 1986). Additionally, Employer did not *ask* Claimant to provide documentation to support her request for leave, and Employer does not suggest how medical documentation would have alleviated the problem of filling Claimant's position. Ultimately, Employer's evidence demonstrates that Employer was aware of Claimant's scheduled surgery, and Employer offered no evidence that Claimant declined any proposed accommodation.

Although Employer acknowledges that medical problems can provide cause of a necessitous and compelling nature to voluntarily terminate employment, Employer maintains that the accommodation Claimant requested was an absence from work, which is not the type of accommodation contemplated by the courts in cases such as *Genetin v. Unemployment Compensation Board of Review*, 451 A.2d 1353 (Pa. 2009). Employer points to the Supreme Court's observations in *Genetin*:

> Clearly, medical problems can provide a cause of a necessitous and compelling nature. However, since it was not the intent of the [Law] to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force, it must also appear that the employee is able to work and be available for suitable work. *See* section 401(d).

451 A.2d at 1356 (quotation and citations omitted).

10

The Court in *Genetin* clarified the burden of proof under Section 402(b), *i.e.*, that where a claimant advises the employer of a physical malady, it is incumbent on the employer to provide suitable work. If such an opportunity is offered to the claimant and she declines it, a finding of ineligibility under section 402(b)(1) would then be appropriate. The Supreme Court determined that the record in *Genetin* was insufficient for purposes of applying that standard. The Court also noted that the referee had not ruled on the employer's claim of ineligibility under Section 401(d) (concerning a claimant's ability and availability for suitable work) and determined that if the claimant was not ineligible under Section 402(b), the employer would be entitled to a determination under Section 401(d). The Court held that remand was necessary to address those issues.

In making this argument, Employer appears to conflate issues relevant to Sections 402(b) and 401(d). Here, the requested leave was *temporary* and of *undetermined* duration. In fact, Claimant told Employer that she would contact Employer with an expected return to work date after her check-up on March 15, 2019. Claimant attempted to submit a document showing that she was released to return to work on that date, nine days after the surgery, but the referee sustained Employer's objection to its admission on the ground that it was dated after Claimant's separation from employment. R.R. at 67a-68a. Although Employer argues that the Board ignored evidence that Claimant would not have been available for work if her request for leave had been granted, Employer prevented the introduction of such evidence during the hearing. Again, Employer does not assert that it offered Claimant any accommodation, such as unpaid leave or an opportunity to work remotely, or that it indicated to Claimant that alternative work would have been available after her surgery.

11

Finally, Employer asserts that Claimant's conduct while she was leaving was so insubordinate as to disqualify her for benefits due to willful misconduct. However, the Board correctly rejected this argument. An employer seeking to disqualify a claimant based on willful misconduct must first establish that the claimant was discharged for the conduct alleged. Section 402(e) of the Law, 43 P.S. §802(e). At the referee's hearing, Claimant testified that she believed she had been discharged, but the Board credited Employer's testimony to find she voluntarily quit in order to undergo surgery.

### Conclusion

The Board credited Claimant's testimony concerning her need for a surgical procedure that potentially required her to be off work for four to six weeks. The Board further noted Claimant's communications with Employer about the surgery. Ultimately, the Board determined that Claimant voluntarily quit her employment because she was given a choice of postponing imperative surgery or losing her job.

Claimant's testimony constitutes substantial evidence supporting the Board's findings. Those findings in turn support the Board's conclusion that Claimant met her burden to prove necessitous and compelling cause to voluntarily leave her employment. The Board properly held that Claimant is not ineligible for benefits under Section 402(b) of the Law.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenner Car Credit,                  :
                                     :
                    Petitioner       :
                                     :
          v.                         :   No.  956 C.D. 2019
                                     :
Unemployment Compensation            :
Board of Review,                     :
                                     :
                    Respondent       :


# O R D E R


AND NOW, this 9th day of July, 2020, the order of the
Unemployment Compensation Board of Review, dated June 21, 2019, is
AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge