# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elise Rodriguez, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 903 C.D. 2016 |
| | : | Argued: June 5, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY JUDGE BROBSON             FILED: September 7, 2017

Petitioner Elise Rodriguez (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed the Referee's decision and order denying Claimant Unemployment Compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law), relating to voluntarily leaving work without cause of a necessitous and compelling nature.[1] For the reasons set forth below, we now affirm the Board's order.

Claimant worked for Quakertown Pain and Rehab (Employer) as a full-time Office Manager. (Certified Record (C.R.), Item No. 8 at 2.) Claimant voluntarily separated from Employer on December 24, 2015, in order to relocate to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides, in pertinent part, that an employee shall be ineligible for compensation for any week "in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."

Florida with her spouse, who had accepted a full tuition scholarship to attend a school in Florida. Claimant subsequently filed for unemployment compensation benefits on January 13, 2016. (C.R., Item No. 3.) The Altoona Unemployment Compensation Service Center (Service Center) issued a determination, finding Claimant ineligible for benefits for failing to show a necessitous and compelling reason for terminating her employment. (C.R., Item No. 4.) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing. (C.R., Item No. 5.)

At the hearing before the Referee, Employer elected not to appear. Claimant, however, appeared without counsel and testified that she voluntarily terminated her employment in order to relocate to Florida with her spouse. (*Id.* at 2.) Prior to making that decision, Claimant testified that her spouse had been unsuccessful at obtaining local employment due to his criminal background. (*Id.* at 3.) In light of those circumstances, Claimant stated that the couple's church presented her spouse with a scholarship to attend a theological school in Tampa, Florida. (*Id.*) Given the distance between Florida and Pennsylvania, Claimant testified that she considered staying in Pennsylvania with their children while her spouse commuted to Florida, but that was not feasible. (*Id.*) According to Claimant, that type of arrangement was against the school's religious principles, as it did not believe in separating families. (*Id.*) As a result, Claimant stated that the entire family had to relocate to Florida so that her spouse could accept the scholarship. (*Id.*)

Following the hearing, the Referee issued a decision, affirming the Service Center's determination, thereby finding Claimant ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Law.

2

(C.R., Item No. 9.) The Referee determined that Claimant and her family made a personal choice to accept the church's scholarship and prospective employment offer,[2] which did not constitute a necessitous and compelling reason under the Law.[3] (*Id.*)

Claimant appealed to the Board, which, in turn, remanded the matter to the Referee. (C.R., Item Nos. 10, 13.) On remand, the Board instructed the Referee to conduct a hearing for the purpose of gathering additional information regarding the merits of the case. (C.R., Item No. 12.) Specifically, the Board solicited the following information:

> 1.    How long was the claimant's husband unemployed before accepting the offer of employment in Florida?
>
> 2.    After losing his job, what efforts did the claimant's husband make to obtain employment locally in order to remain in Pennsylvania?
>
> 3.    What is the claimant's salary or hourly wages at his new job in Florida?
>
> 4.    If hourly, how many hours per week is the claimant's husband working?
>
> 5.    What were the claimant's husband's wages at his prior job?

(*Id.*) At the remand hearing, Claimant appeared before the Referee along with counsel and her husband. Claimant's husband, Miguel Caballero, testified that he worked as a certified forklift operator and also had a Class A driver's license.

---

[2] The Board, thereafter, did not make any finding that Mr. Caballero had a prospective offer of employment. (C.R., Item No. 17.)

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-918.10.

(C.R., Item No. 16 at 4.) Much of his employment, he testified, was irregular, as there were times in which he was unemployed up to a year. (*Id.*) Moreover, Mr. Caballero stated that he was unable to obtain permanent employment with any of his temporary jobs because he could not pass background checks. (*Id.* at 4-5.) He attributed these unsuccessful efforts to his criminal history. (*Id.*) Nonetheless, Mr. Caballero testified that he persisted by contacting his temporary staffing agency, as well as other temporary staffing agencies, on a weekly basis seeking employment opportunities. (*Id.* at 4.) According to Mr. Caballero, employers continually rejected his solicitations, which prompted him to start his own business. (*Id.* at 4-5.) That venture ultimately failed. (*Id.* at 4.)

Mr. Caballero testified that his church presented him with an opportunity to attend a theological school on a full tuition scholarship. (*Id.* at 6-7.) Although the school was located in Tampa, Florida, Mr. Caballero stated that he accepted the opportunity. (*Id.* at 6.) The school, however, would only allow him to attend on the condition that he move to Florida with his entire family, as it did not believe in separating families. (*Id.*) Furthermore, according to Mr. Caballero, there was a good prospect of full-time employment as a minister following the completion of the ministerial program. (*Id.* at 7.) He explained that he would receive his bachelor's degree when he finished. (*Id.*) Finally, Mr. Caballero testified that, while in Florida, he found part-time work that paired well with his full-time course load, and Claimant briefly testified that she had sought suitable work in Florida but had been unable to obtain such employment. (*Id.* at 6, 10.)

Following the remand hearing, the Board found as follows:

1.   Quakertown Pain and Rehab, P.C. employed the claimant from May 8, 2013, through December 24, 2015, as an office manager earning $30,000 annually.

4

2. The claimant's husband is a certified forklift operator; he also has a Class A driver's license.

3. During 2015, the claimant's husband worked for a temporary staffing agency as a truck driver for various clients.

4. The claimant's husband attempted to obtain permanent employment as a truck driver, but due to his criminal record, he was unable to pass employers' background checks.

5. In late 2015, the claimant's husband received a scholarship to a college in Florida.[4]

6. The claimant's husband accepted the scholarship and moved to Florida.

7. After moving to Florida, the claimant's husband began working for a temporary staffing agency as a truck driver; he also attended school full-time.

8. On December 24, 2015, the claimant voluntarily quit her employment to relocate to Florida with her husband.

(C.R., Item No. 17.) Based on these facts, the Board affirmed the Referee's determination, holding that Claimant was ineligible for unemployment compensation benefits under Section 402(b) of the Law. (*Id.*) The Board reasoned that Claimant's husband made a personal choice to attend school in Florida, evidenced by Claimant's failure to demonstrate that circumstances beyond her

---

[4] The Referee finds that Claimant's husband accepted a scholarship to a "college" in Florida, but there is nothing in the record identifying the college or confirming that the school is a "college."

husband's control caused her relocation. (*Id.*) Specifically, the Board found that Claimant failed to present evidence that her husband's inability to obtain employment within his field was the cause of her relocation or that her spouse relocated to accept an offer of permanent employment. (*Id.*) Claimant now petitions this Court for review.

On appeal,[5] Claimant presents two arguments. Claimant first argues that substantial evidence of record does not support the Board's determination. Claimant then argues that the Board's determination was based on an error of law or abuse of discretion inconsistent with the "follow-the-spouse" doctrine.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Claimant asserts that substantial evidence does not support the Board's determination. In doing so, Claimant at no point addresses any finding of fact to which she takes exception or explains how the evidence of record fails to support such finding. Instead, Claimant merely provides a narration of the facts in the instant matter in support of her position. Because Claimant failed to challenge any finding of fact in her brief, the Board's findings are binding on appeal. *Munski v. Unemployment Comp. Bd. of Review*, 29 A.3d 133, 136 (Pa. Cmwlth. 2011).

We next address Claimant's argument that the Board committed an error of law or abuse of discretion because its determination was inconsistent with the "follow-the-spouse" doctrine. Claimant contends that under the "follow-the-spouse" doctrine, she had a necessitous and compelling reason to voluntarily quit her employment when she relocated with her spouse to Florida.

Where the termination of employment is voluntary, the claimant bears the burden of demonstrating that it was for a necessitous and compelling reason. *Pennsylvania Gaming Control Bd. v. Unemployment Comp. Bd. of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth.), *appeal denied sub nom. Wyatt v. Unemployment Comp. Bd. of Review*, 62 A.3d 381 (Pa. 2012). A claimant may meet this burden by showing that circumstances produced both a real and

substantial pressure to leave her employment and that a reasonable person would have been compelled to act in the same manner under the same circumstances.[6] *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 833 (Pa. 1977); *Beachem v. Unemployment Comp. Bd. of Review*, 760 A.2d 68, 71 (Pa. Cmwlth. 2000). Our court has held that the "follow-the-spouse" doctrine satisfies this inquiry. *Glen Mills Schs. v. Unemployment Comp. Bd. of Review*, 665 A.2d 561, 564 (Pa. Cmwlth. 1995).

Under the "follow-the-spouse" doctrine, a claimant's burden is two-fold. *Wheeler v. Unemployment Comp. Bd. of Review*, 450 A.2d 775, 778 (Pa. Cmwlth. 1982). First, the claimant must establish that the move created insurmountable commuting problems *or* that maintaining two residences would result in economic hardship. *Glen Mills*, 665 A.2d at 564. Under the second inquiry, the claimant must also demonstrate that circumstances beyond the control of the claimant's spouse caused the necessity to relocate, the decision was reasonable and made in good faith, and that the relocation was not a result of the spouse's personal preferences. *Pennsylvania Gaming Control Bd.*, 47 A.3d at 1267; *Id.*

Turning to the first prong of the "follow-the-spouse" doctrine, Claimant testified before the Referee, in the initial hearing, that her spouse accepted a scholarship to attend a school located in Tampa, Florida. Claimant also testified that she resided in Pennsylvania at the time she terminated her employment to join her husband in Florida. As a result, the move to Florida

---

[6] Whether a claimant has a cause of a necessitous and compelling nature to voluntarily leave employment is a question of law subject to this Court's review. *Pennsylvania Gaming Control Bd.*, 47 A.3d at 1265.

8

created an insurmountable commuting problem for Claimant with regard to her Pennsylvania job. *See Glen Mills*, 665 A.2d at 564 (holding that it is obviously unreasonable to commute five hours round trip each day). Accordingly, Claimant sustained her burden of demonstrating an insurmountable commuting problem and, therefore, satisfied the first prong of the "follow-the-spouse" doctrine.

In order to satisfy the second prong of the analysis, a claimant must demonstrate that circumstances beyond her spouse's control caused the necessity to relocate, that the decision was reasonable and made in good faith, and that the relocation was not a result of the spouse's personal preferences. We note that the desire to maintain the family unit, alone, is insufficient to establish a necessary and compelling reason to leave employment. *Schecter v. Unemployment Comp. Bd. of Review*, 491 A.2d 938, 941 (Pa. Cmwlth. 1985). On the other hand, a claimant may meet her burden by demonstrating that the relocating spouse's position has been eliminated. Other examples of evidence offered to meet this burden have included a limited job market due to the highly specialized nature of a spouse's occupation,[7] a spouse's military orders,[8] a spouse's medical needs,[9] or evidence that a spouse's job will be eliminated.[10]

---

[7] *Glen Mills*, 665 A.2d at 564.

[8] *Pennsylvania Gaming Control Bd.*, 47 A.3d at 1270-71.

[9] *Steck v. Unemployment Comp. Bd. of Review*, 467 A.2d 1378, 1380 (Pa. Cmwlth. 1983).

[10] *See Mechanicsburg Area Sch. Dist. v. Unemployment Comp. Bd. of Review*, 551 A.2d 401, 402-03 (Pa. Cmwlth. 1988) (holding that spouse's employer informing spouse that it would be going out of business on specific date satisfied burden under "follow-the-spouse" doctrine).

9

Here, the Board determined that Claimant failed to establish that her spouse's inability to find employment was due to circumstances beyond his control. With regard to Mr. Caballero's employment, the Board found that "[d]uring 2015, the claimant's husband worked for a temporary staffing agency as a truck driver for various clients," and he "attempted to obtain permanent employment as a truck driver, but due to his criminal record, he was unable to pass employers' background checks." (C.R., Item No. 17, Finding of Fact (F.F.) Nos. 3, 4.) Thus, prior to his relocation to Florida for purposes of schooling, Mr. Caballero was able to maintain some level of employment as a truck driver—he just was unable to obtain a permanent position. His relocation to Florida was not done in order to accept an offer of employment in a highly-specialized field with a limited job market or because his job was going to be eliminated. Moreover, Mr. Cabellero did not testify that he was unable to find other types of employment locally or that he even tried to do so. He also did not testify to exploring any possible schooling opportunities that may have been available to him locally. He only testified that there was no scholarship program like this in Allentown. (C.R., Item No. 16 at 6.) Even more importantly, the Board did not find that Mr. Caballero had any offer of employment whatsoever that was contingent upon his completing the schooling in Florida. To be clear, Mr. Caballero did not testify that he would have a job following the completion of his schooling. Instead, when asked whether a new opportunity for employment arose in July 2015, Mr. Caballero responded: "No. What came up at that time was a scholarship for school." (C.R., Item No. 16 at 6.) When asked if there is a "good prospect for

10

long-term future employment as a minister," he replied "Yeah. I'm going to receive my bachelor's degree when I'm finished."[11] (*Id.* at 7.) Under these circumstances, we must conclude that the Board did not err in determining that his relocation was the result of personal preference, not necessity.[12]

Furthermore, we observe that "the objective of the Law . . . is to ensure that employees who become unemployed involuntarily are provided with some semblance of economic security." *Hamot Medical Center v. Unemployment Comp. Bd. of Review*, 645 A.2d 466, 469 (Pa. Cmwlth. 1994). Thus, it is not the purpose of unemployment compensation to be a vehicle through which a family may finance a voluntary change of career or a desire for a spouse to obtain additional education. If Mr. Caballero had a firm offer of employment for when he completed the schooling, our decision may have been different.[13]

---

[11] Claimant testified that her "husband decided to go into ministry with [their] church," and "they offered him a scholarship for school in Tampa, to pursue his career in ministry." (C.R., Item No. 8 at 3.) She then testified that "he's actually working for the church," but then seemed to contradict that testimony when she testified that "he's doing ministry work for the school itself." (*Id.*)

[12] In addition, while not addressed by the Referee or Board, it is not clear to the Court that Claimant's decision to relocate was reasonable under the circumstances. Here, Claimant was the only spouse with permanent employment, which she gave up so that her husband could pursue an educational opportunity with no guaranteed job—only a potential for a job. The educational opportunity, although it involved a scholarship, was not actually "free" for the family, because it came at a cost of the loss of Claimant's $30,000 annual income.

[13] We note that in considering whether a claimant established cause of a necessitous and compelling nature to voluntarily terminate employment due to another employment opportunity which ultimately does not come to fruition, this Court has held that "[t]he receipt and acceptance of a firm offer of employment . . . constitute[s] compelling cause for termination of employment." *Top Oil Co. v. Unemployment Comp. Bd. of Review*, 488 A.2d 1209, 1211 (Pa. Cmwlth. 1985). "The offer of employment, however, must be definite." *Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012). Here,
**(Footnote continued on next page…)**

11

For these reasons, Claimant failed to satisfy the second prong of *Wheeler*—that circumstances beyond the control of the claimant's spouse caused the necessity to relocate, the decision was reasonable and made in good faith, and that the relocation was not a result of the spouse's personal preferences.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

Claimant quit her job despite the fact that her husband did not have a firm and definite offer of employment following the completion of his schooling.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Elise Rodriguez,       :
     Petitioner  :
            :
    v.       :  No. 903 C.D. 2016
            :
Unemployment Compensation  :
Board of Review,      :
     Respondent :

# **O R D E R**

AND NOW, this 7th day of September, 2017, the order of the Unemployment Compensation Board of Review is AFFIRMED.

---
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elise Rodriguez, : 
          Petitioner : 
         : 
      v. : 
         : 
Unemployment Compensation : 
Board of Review, : No. 903 C.D. 2016
          Respondent : Argued: June 5, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE             FILED: September 7, 2017


As I believe Elise Rodriguez (Claimant) has met her burden under the "follow the spouse" doctrine, I must dissent.

We have long held that the Unemployment Compensation Law (Law)[1] "was intended to be remedial legislation which is to be liberally and broadly construed…" *Steck v. Unemployment Compensation Board of Review*, 467 A.2d 1378, 1380 (Pa. Cmwlth. 1983) (citing *Kleban v. Unemployment Compensation Board of Review,* 459 A.2d 53, 55 (Pa. Cmwlth. 1983)). In the "follow the spouse" context, we have recognized the unique nature of the family

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§751-919.10.

unit in situations where compelling reasons motivated the initial move in the first place:

> While preservation of the family unit does not, in and of itself, give rise to necessitous and compelling reason under Section 402(b), [] *we are not indifferent to its social desirability. Moreover, in the absence of statutory language mandating such application, we are disinclined to interpret the Law in a way which tends to be disruptive to family unity.* In this case, we believe it is sufficient that the claimant has demonstrated a good faith desire to keep her family together, that her interest in preserving the family unit was irreconcilable with maintenance of her job due to the distance between her's [sic] and her husband's places of employment, and that her husband's decision to relocate was motivated by compelling factors.

*Stevens v. Unemployment Compensation Board of Review*, 473 A.2d 254, 257 (Pa. Cmwlth. 1984) (emphasis added).

In the present case, the Majority has shown no such "disinclin[ation]," despite no legislative direction otherwise. Coupled with the "compelling factors" before us (equally as compelling as those in *Stevens*), the Majority's interpretation and application of the "follow the spouse" doctrine is erroneous and, for this family, quite harmful.[2] As there is no indication that this is consistent with legislative intent, I am compelled to dissent.

---

[2] The Majority stresses Claimant's husband's lack of "a firm offer of employment" upon completion of his ministerial training, stating had it been otherwise the Majority's decision "may have been different." (Majority, slip op. at 11.) By making this suggestion, the Majority is adding (wrongly) an additional prong to the follow-the-spouse doctrine, something this Court has never required, from the incarnation of this doctrine in *Wheeler v. Unemployment Compensation Board of Review*, 450 A.2d 775 (Pa. Cmwlth. 1982) until now. As such, I find the language of Judge Blatt in her concurring and dissenting opinion in *Wheeler* to be applicable: "[B]eing mindful that the Unemployment Compensation Law was intended to be remedial legislation which is to be **liberally and broadly construed**, and cognizant of these troubled economic

_____
JOSEPH M. COSGROVE, Judge

times, I believe that the majority's rule would promote a result that adversely impacts upon the preservation of the family unit. It would force families to divide in situations such as the present, and I cannot believe that the legislature intended such a result. *Wheeler*, 450 A.2d at 778-779 (Blatt, J., concurring and dissenting)(emphasis added; internal footnote omitted).

JMC-3