# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela Williams,                             :
                      Petitioner             :
                                             :
           v.                                :     No. 197 C.D. 2017
                                             :     Submitted:  August 18, 2017
Unemployment Compensation                    :
Board of Review,                             :
                      Respondent             :

**BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE DAN PELLEGRINI, Senior Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION
BY JUDGE BROBSON                           FILED:  October 2, 2017**

Petitioner Pamela Williams (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a Referee's decision, denying Claimant benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct.  For the reasons set forth below, we affirm.

Claimant filed for unemployment compensation benefits after being discharged from her employment as a certified nursing assistant for Ann's Choice (Employer).  (Certified Record (C.R.), Item No. 2.)  The Erie UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Law.  (C.R., Item No. 6.)

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant appealed the Service Center's determination, and a Referee conducted a hearing.[2] (C.R., Item No. 7.)

Employer presented the testimony of its human resources manager, Jeannette Collins (HR Manager), its assistant director of nursing, Denise Cattalo (ADON), and its director of nursing, Terri Costa (DON). (C.R., Item No. 17.) The Claimant testified on her own behalf. (*Id.*)

The HR Manager testified that Employer has an attendance policy that provides that employees who "walk off the job without authorization" are subject to termination for job abandonment. (*Id.* at 7-8.) Employer also has a policy prohibiting the falsification of documents. (*Id.*) Further, the HR Manager testified that Employer provided Claimant a handbook containing these policies, and Claimant signed an acknowledgment that she had received and read the policies. (*Id.* at 7.)

The ADON testified that she has an office with a window overlooking the parking lot, and on June 2, 2016, at approximately 3:05 p.m., she observed Claimant walk out to her car and leave the premises. (*Id.* at 9.) The ADON then testified that she inquired as to when Claimant punched out, as the ADON knew Claimant's shift was not over until 3:30 p.m. (*Id.* at 9-10.) The ADON discovered that Claimant submitted a "missed punch" form, indicating her punch out time

---

[2] In this case, the Referee conducted a hearing on September 14, 2016. (C.R., Item No. 11.) After Claimant's appeal of the Referee's decision, it was discovered that the audio recording of the hearing had been accidentally deleted and was irretrievable. (C.R., Item No. 13.) Accordingly, the Board remanded to the Referee to recreate a record. (C.R., Item No. 14.) The Referee conducted a second hearing on November 16, 2016, and the Board thereafter issued its decision and order based on the record created at the November 16, 2016 hearing.

as 3:30 p.m., in violation of Employer's policy regarding falsification of documents. (*Id.* at 10.)[3] The ADON then testified that she confronted Claimant regarding her early departure and inaccurate missed punch form, and Claimant admitted to leaving early and apologized for it. (*Id.* at 11-12.)

The DON testified to calling Claimant on June 15, 2016, to inform her of her termination. (*Id.* at 15, Employer's Ex. 11.) The DON testified that she told Claimant that her termination was due, in part, to her early departure on June 2, 2016, and her submission of a missed punch form that did not accurately portray the time she left, which constituted violations of the Employer's attendance and falsification policies. (C.R., Item No. 17 at 15.)

Claimant, on her own behalf, testified to receiving and reading the handbook containing Employer's policies on attendance and falsification. (*Id.* at 17.) Claimant also testified that on June 2, 2016, she had started her shift at 6:30 a.m., thirty minutes early. (*Id.*) This, Claimant testified, was the reason she left at 3:00 p.m., instead of her scheduled time of 3:30 p.m. (*Id.*) Regarding the missed punch form, Claimant testified that she did not fill out the form until approximately a week later, and she was not thinking when she filled it out. (*Id.* at 18.) Claimant testified that when she "admitted" to the ADON that she had left work early on June 2, 2016, she thought the ADON was asking her about a different date. (*Id.* at 19.) Claimant testified that she thought the ADON was

---

[3] In order to facilitate the recording of the time worked by its employees, Employer provides its employees with a badge, which is to be used in order to "punch in" and "punch out" from work. (C.R., Item No. 17 at 20.) If the employee does not have her badge with her when she arrives to work, she is to report her time using a "missed punch" form. (*Id.*) Claimant did not have her badge on June 2, 2016, and she used a missed punch form in order to report her time. (*Id.*)

3

referring to a different date in which Claimant left work at approximately the same time to move her car and returned to work immediately thereafter. (*Id.*)

Following the hearing, the Referee issued a decision, in which she found Claimant to be ineligible for unemployment compensation benefits and affirmed the Service Center's determination. (C.R., Item No. 11.)

Claimant appealed the Referee's order to the Board, which affirmed the Referee's decision. (C.R., Item Nos. 12, 18.) The Board specifically resolved evidentiary disputes, in relevant part, in favor of Employer. (C.R., Item No. 18.) In doing so, the Board issued its own findings of fact and conclusions of law. The Board made the following relevant findings:

1. The claimant was last employed as a full-time certified nursing assistant, household associate, by the employer, Ann's Choice, from February 13, 2012, until June 15, 2016, at a final rate of $18.81 per hour and her last day of work was June 14, 2016.

2. The employer has an attendance policy that states that employees who walk off the job are subject to termination for job abandonment.

3. The employer also has a policy that prohibits falsification of documentation.

4. The claimant knew or should have known about the employer's policies.

5. On June 2, 2016, the claimant was scheduled for work until 3:30 p.m.

6. On June 2, 2016, the assistant director of nursing [(ADON)] looked out her window and observed the claimant leaving the premises at 3:05 p.m.

7. The claimant did not punch out on June 2, 2016.

8. Instead, the claimant filled out a missed punch form that indicated that she left at 3:30 p.m.

4

> 9. The first time the [ADON] saw the claimant again, the ADON asked the claimant about leaving work early, and the claimant lied about her whereabouts.
>
> 10. Later, the claimant admitted to falsely filling out the missed punch form.
>
> 11. The employer uniformly enforced its policies.
>
> 12. The employer terminated the claimant because she violated the employer's attendance policy and falsification policy.
>
> 13. The original audio recording was unable to be transcribed.
>
> 14. The employer's representative passed away shortly before the scheduled remand hearing.

(*Id.*)

The Board, in concluding that Employer discharged Claimant for willful misconduct, reasoned:

> Here, the employer credibly testified that it had a policy that prohibited falsification of documents and that employees were required to work throughout the duration of their scheduled work hours. The employer's policies were reasonable. The claimant knew or should have known about the employer's policies.
>
> However, on June 2, 2016, the claimant was scheduled to leave work at 3:30 p.m. She left work at 3:05 p.m. She then submitted a missed punch form indicating that she did not leave work until 3:30 p.m. The claimant violated the employer's policies regarding attendance and falsification of documents. The claimant admitted her actions. The claimant also lied to the employer about leaving early.
>
> Not only did the claimant's actions constitute a violation of the employer's policies, but her dishonesty falls below the standard of behavior an employer can expect from an employee, and constitutes misconduct even without a policy.

(*Id.*)

Claimant now petitions this Court for review. On appeal,[4] Claimant first appears to argue that substantial evidence of record does not exist to support the Board's finding that Employer discharged Claimant because she violated Employer's attendance policy and falsification policy. Claimant also argues that the Board erred in concluding that Employer discharged Claimant for willful misconduct.[5] Alternatively, Claimant argues that, if her actions did rise to the level of willful misconduct, she had good cause for her conduct.

First, we will address Claimant's argument that substantial evidence does not exist to support the Board's finding that Employer discharged Claimant because she violated Employer's attendance policy and falsification policy. In doing so, we initially note that Claimant does not identify with specificity which of the Board's findings of fact that she challenges. In Claimant's brief, however, it is argued that Claimant was terminated for submitting too many missed punch cards. (Pet'r Br. at 10.) Accordingly, we will construe this argument to be that Claimant is challenging the Board's finding that Employer terminated Claimant because she violated Employer's attendance policy and falsification policy. (C.R., Item No. 18, Finding of Fact (F.F.) No. 12.)

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] In her brief, Claimant mistakenly refers to Section 402 of the Law as "43 P.S. *§ 402*" and contends that the General Assembly repealed Section 402 of the Law on January 20, 2017. (Pet'r Br. at 11 (emphasis added).) This, however, is not correct, as Section 402 of the Law may be found at "43 P.S. *§ 802*." *See* footnote 1, *supra*. Section 402 of the Law is still in effect. The Act of May 22, 1933, P.L. 654, and the Act of May 18, 1937, P.L. 654, repealed statutory provisions previously set forth at 43 P.S. §§ 381-402.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). Further, even if evidence exists in the record that could reasonably support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Claimant contends that Employer informed her that she was terminated due to the fact that she had submitted a multitude of missed punch forms, and Employer did not mention her leaving early on June 2, 2016. A review of the transcript from the Referee's hearing establishes that substantial evidence exists for the Board's finding that Employer terminated Claimant's employment because she violated Employer's attendance policy and falsification policy. The DON testified at the hearing to calling Claimant to inform her of her termination. (C.R., Item No. 17 at 15.) At the Referee's hearing, the DON recalled the conversation as follows:

> I was trying to tell her that [her termination] was for . . . nine days of filling out missed punches in one pay period,

7

which was fourteen days. And she had already been verbally counseled for that, so we had already talked to her about not punching in and out and continuously just handing in forms. And then I did explain to her that because she had left the building early and then had put in her [missed punch form] that she actually left at 3:30, that that was why she's being terminated.

(*Id.*) Further, Employer introduced into evidence a statement authored and signed by the DON that detailed Claimant's termination. (*Id.* at Employer's Ex. 11.) The statement identified the reasons that Claimant was terminated as both the number of missed punch forms that Claimant submitted and Claimant leaving work early and submitting a falsified missed punch form. (*Id.*) Looking at the evidence of record in the light most favorable to the prevailing party, we hold that the Board's finding that Employer terminated Claimant's employment due to violations of Employer's attendance policy and falsification policy is supported by substantial evidence.

We now turn to Claimant's argument that the Board erred in determining that Employer discharged Claimant for willful misconduct, and, alternatively, that the Board erred in failing to conclude that she had good cause for her conduct.[6] Whether or not an employee's actions amount to willful misconduct

---

[6] In her brief, Claimant argues that she had a "necessitous and compelling" reason for leaving work before her scheduled shift was over. (Pet'r Br. at 7-8.) Claimant misapprehends the law insofar as whether a claimant has a necessitous and compelling reason for leaving employment is the analysis applied when an employee voluntarily quits her employment. *See generally Pa. Gaming Control Bd. v. Unemployment Comp. Bd. of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth.) (holding claimant who voluntarily quits her employment bears burden of proving that necessitous and compelling reasons motivated decision), *appeal denied*, 62 A.3d 381 (Pa. 2012). As Claimant did not voluntarily quit her position, we will construe her argument to be that she had good cause for voluntarily leaving work early on June 2, 2016.

8

is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard of employer's interests,
> (b) deliberate violation of the employer's rules,
> (c) disregard of standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). Willful misconduct includes an employee's deliberate violation of an employer's rule and an employee's disregard of the standard of behavior expected by an employer. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Comp. Bd. of Review*, 309 A.2d 165, 168 (Pa. Cmwlth. 1973). An employer, seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies, must prove the existence of the rule or policy and that the claimant violated it. *Walsh*, 943 A.2d at 369. If, however, the claimant can show good cause for the violation, then there should be no finding of willful misconduct. *Id.* A single incident of misconduct may support a denial of benefits. *Jones v. Unemployment Comp. Bd. of Review*, 373 A.2d 791, 792 (Pa. Cmwlth. 1977).

9

First, we must determine whether Employer sustained its burden and established a *prima facie* case of willful misconduct. In doing so, Employer must initially establish the existence of a policy or rule. The HR Manager testified that a handbook containing the company policies is provided to new employees upon their hiring, and it is also available through an Internet portal. (C.R., Item No. 17 at 7.) Among the policies provided to new employees are policies regarding attendance and standards of conduct. (*Id.* at 7-8.) The HR Manager testified that the attendance policy provides that employees who walk off the job without authorization are subject to termination for job abandonment, and the standards of conduct policy prohibits the falsification of documents. (*Id.*) Based upon this testimony, Employer sustained its burden to establish that it maintains policies regarding attendance and falsification of documents.

The second requirement of Employer's *prima facie* case is to show that Claimant was or should have been aware of this policy. The HR Manager testified that Claimant received copies of these policies, in addition to signing an acknowledgement form signifying her receipt and agreed compliance with the policies. (*Id.* at 7.) Employer introduced into evidence Claimant's signed acknowledgement form. (*Id.* at Employer's Exhibit 3.) Claimant herself also testified to receiving and reading the policies. (*Id.* at 16-17.) Based upon this evidence, the Board found that Claimant knew or should have known about Employer's policies. (C.R., Item No. 18, F.F. No. 4.) Employer, therefore, met its burden to establish that Claimant was or should have been aware of Employer's policy.

Additionally, Employer must establish the third requirement of its *prima facie* case by showing that Claimant violated Employer's policy. The

10

ADON testified that Claimant was scheduled to work from 7:00 a.m. to 3:30 p.m. on June 2, 2016. (C.R., Item No. 17 at 9.) Although Claimant's shift was not to end until 3:30 p.m., the ADON observed Claimant leaving work at approximately 3:05 p.m. (*Id.*) The ADON testified that when Claimant submitted a missed punch form for June 2, 2016, the form listed Claimant's clock-out time to be 3:30 p.m. (*Id.* at 10.) As the Board found this testimony credible, Employer satisfied its burden to prove Claimant violated the policy.

Once an employer has satisfied its burden, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). The employee establishes good cause where his actions are justified or reasonable under the circumstances. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Here, Claimant failed to establish good cause for leaving the workplace prior to her shift ending. At the hearing in front of the Referee, Claimant testified to being aware that walking off the job early could result in termination. (C.R., Item No. 17 at 17.) Claimant also testified that she was aware that falsifying documentation could result in termination. (*Id.*) Claimant claimed that she did not leave work early that day; rather, she merely started her shift thirty minutes early and, therefore, was leaving on time. (*Id.* at 18-19.) Claimant testified regarding the events as follows:

> R  So why didn't you punch in when you came in on the 2nd?
>
> C  I didn't have a badge, ma'am. That's why I filled the paper out. I didn't have a badge and I didn't start – I'm sorry, go ahead.

11

R    Oh, no, that's fine. So if you started at 6:30 [a.m.], why did you fill out [your missed punch form] to say 7:00 a.m.?

C    I didn't think, because I filled that paper out the following week. And I didn't realize that I had even – I – I didn't have a break as well.

R    Did you fill out [your missed punch form] on June the 2nd?

C    I did not. I did that . . .

R    So then why did you say date signed, June 2nd?

C    Because I have problems with the paper, when I – the missed[]punch form, when I was filling them out, I was getting shorted on my check because I wasn't filling them out correctly. So when I started getting them – even though I wasn't doing them until the following week or a couple days later, I still would put it as I would that day, because I was messing up the time where I was short on my – shorting myself on my paychecks on this missed[]punch forms.

(*Id.*)

Claimant's argument that she showed up early and, thus, was justified in leaving early essentially asks this Court to adopt her preferred version of the facts over the Board's findings. But, as noted above, the Board specifically resolved the evidentiary conflicts in favor of Employer. It is, therefore, the Board's findings and not Claimant's contentions that determine whether Claimant showed good cause for her conduct. *Bruce v. Unemployment Comp. Bd. of Review*, 2 A.3d 667, 671-72 (Pa. Cmwlth.), *appeal denied*, 12 A.3d 753 (Pa. 2010). In resolving the evidentiary conflicts in favor of Employer, the Board credited Employer's testimony that it had a policy that prohibited falsification of documents and that employees were required to work throughout the duration of their scheduled work hours. (C.R., Item No. 18 at 3.) Further, the Board determined

that, although Claimant was scheduled to leave work at 3:30 p.m., she left at approximately 3:05 p.m., and submitted a missed punch form that reflected that she had worked until 3:30 p.m. (*Id.*) Given that the Board did not credit Claimant's testimony, the Board did not accept Claimant's rationale for leaving at 3:05 p.m. Moreover, that rationale still would not establish good cause for why she did not complete her missed punch form accurately by setting forth her early start and departure times. Claimant, therefore, did not establish good cause for the willful misconduct. Accordingly, the Board did not err in concluding that Claimant's actions constituted willful misconduct.

Accordingly, the order of the Board is affirmed.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela Williams,           :
                 Petitioner :
                           :
        v.                 :    No. 197 C.D. 2017
                           :
Unemployment Compensation  :
Board of Review,           :
                Respondent :

## **O R D E R**

AND NOW, this 2nd day of October, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge